Gilmore v. Georgia Department of Corrections Good morning, and may it please the Court. Chris Kennett, the plaintiff, Clarissa Gilmore. This Court should partially overturn its prior precedents in Marsh and in Thomas because those decisions were wrong when they were decided. Their error has only become more clear with the passage of time, and because their mistake has created a raft of conflicts between the cases of this Court and the United States Supreme Court, between this Court and all 11 of its sister circuits, and even within this Court itself. Back in 2001, Marsh said, and Thomas later agreed, that we do not understand Wilson v. Lane to have held that a consensus of cases of persuasive authority from other courts would be able to establish the law clearly. But that's exactly what Wilson said, and the Supreme Court has since reaffirmed that rule in Ashcroft, in Plumhoff, and in Wesby. And even before Wilson, the Supreme Court had already held in Lanier that sister circuit authority could provide fair notice to State officials. Each of these five decisions is binding on this Court and requires that Marsh and Thomas be partly overturned. Would you agree the Supreme Court, though, has never held actually as holding that a robust consensus clearly established the law in a way that gave an officer fair notice and stripped them of qualified immunity? Can you give me an example where the Supreme Court said that robust consensus of circuit precedent by itself established that clear and fair notice? Yes, Your Honor, they haven't. That's the short answer. But the robust consensus is still a holding in each of these cases, and I'd like to explain why. So if you look at Wilson, for instance, what the Court said was, the plaintiffs here have brought us factually analogous circuit authority from the Sixth Circuit that has anticipated our ruling today. Not good enough. Why is it not good enough? It's not clearly established law because clearly established law requires controlling authority from this jurisdiction or a robust consensus. So you didn't bring us a consensus or persuasive authority, you lose. So it announced that rule, it applied that rule, and the result of applying that rule was that the plaintiff lost. Yeah, the problem with it, I understand that argument. The problem with it, though, is that by not saying that there was a robust consensus that gave the fair notice, we're left really at some, to guess to some extent, on when it's enough, right? What do you, in response to the Chief's point, what do you think makes up or constitutes a robust consensus? That's hard. So I agree that that is the less obvious question, Your Honor. So Your Honor's question included two components. Are we bound, is there a holding that a robust consensus is enough? And there is. And Andrew versus White just two weeks ago made clear that where you, when the Supreme Court states a rule and relies on that rule, it's a holding. And then Your Honor's second question, which is what makes something a robust consensus? So I would say it's the following. First, there has to be general but not unanimous agreement among sources of persuasive authority. Why would it be okay for it not be unanimous? I mean, if the point of this is fair notice to the officer, and as I understand it, the doctrine is supposed to shield liability for all but the plainly incompetent and those who knowingly violate the law, why would contrary authority not undermine your point entirely? A few responses, Your Honor. First, we don't have, in our case, authority that is contrary, so you wouldn't need to reach that in this case. But I also don't think that contrary authority by itself is enough to undermine that consensus as a— So we don't have to decide it in this case whether that's true or not. No, but I point this work both to the meaning of the word consensus, which is a general agreement among a group of parties, not a unanimous agreement. So the Supreme Court didn't choose the word unanimous. And I'd also direct this Court to the Seventh Circuit decision in Burgess, where Judge Posner wrote about this specific issue, and he said it wouldn't make sense, given the fact that the touchstone of this inquiry is fair notice, to say that one contrary authority could provide safe harbor for conduct no matter what else. If you had an 11 to 1 split, and the 1 was decided in the 1950s before the Supreme Court changed the structure of the meaning of a constitutional amendment, and all the other 11 were after that, I could see the point. Maybe in that case that one outlier doesn't destroy the robust consensus. But when you start changing the numbers, it becomes really, really hard to deal with the lack of unanimity. So you may think one is not enough to destroy it, but if you have six and four, what's the answer? I mean, how does someone have fair notice? How does a law enforcement officer have fair notice when there's not unanimity? I think the reason that a law enforcement officer—well, it's not that, you know, I can't explain why, like, a lack of unanimity in general would provide fair notice, because I don't think it makes sense at that level of abstraction. What I'm saying is that there are particular constellations of facts where you wouldn't have unanimity, but there would be such a strong consensus, and there would be such an obvious reason to disagree. Let's get to this case, okay, for a moment. And Judge Jordan, I think, raised a helpful point about the old 1950s case, and maybe there's been some intervening Supreme Court precedent. Of course, what we have here is what is being touted as a robust consensus are cases from sister circuits that had held, contrary to our circuit, every one of them had held that you need reasonable suspicion to strip search detainees before putting them in general population. We went against that. We were the first circuit to do so. There were a lot of cases on the other side. And in close proximity, the same exact circuits said what you would like for us to say, which is reasonable suspicion is required for a stripped search of prison visitors. Using really basically the same logic. But then we have intervening precedents from our court, the first of which Powell, and arguments made in Powell that, hey, visitors are more of a problem than detainees. And we said, well, we understand visitors can plan ahead, but some detainees actually, civil disobedience, gang members, might want to be arrested to smuggle in contraband. But we recognize visitors are a problem in that situation. And then the Supreme Court in Florence agrees with us and rejects all these circuits, the same circuits that are being relied upon here, and the Supreme Court begins its discussion of the deference owed to prison officials by discussing visitors and how visitors bring in contraband. Why isn't that enough to undermine fair notice on the reasonable suspicion question? Doesn't that really create a problem for you? It does not, Your Honor. So I actually think Florence is quite a good case for us, if only indirectly so. Because if you look at Florence, what the Supreme Court did there is it created a very narrow rule for a particular class of arrestees where you didn't need reasonable suspicion. It only got a 5-4 majority for the idea, even for that narrow class, that you didn't need reasonable suspicion. Two of the five justices in the majority wrote separately to say, this doesn't even apply to other arrestees. Wait a minute. So you're telling me that because the court was fractured, that that gave some fair notice to the officer? No. Here's what's different, Your Honor. So I think that point is that no reasonable official could read Florence as extending beyond the facts before Florence because the majority said, you cannot extend this, and made clear that it likely does not extend. But this case is different in four material and, I think, dispositive respects from Florence that all make clear that a different answer on reasonable suspicion is dictated. First, we are dealing with three individuals who stand in a fundamentally, profoundly different constitutional footing with respect to their reasonable expectations of privacy. Second, Florence applies only to individuals who are joining, arrestees who are joining the general population because of security risks attendant to that specific context within the jail that has no application here. Three, that search was done pursuant to a blanket rule, and the Supreme Court has long made clear that you get more latitude for blanket rules than you do for individual rules because of the risk of unfair application, which we see here. And fourth, the strip search in Florence was a visual strip search, and the majority itself made clear that we understand that there are different concerns with a more intrusive strip search. Well, tell me this then. Isn't though then, when you consider all those things that you just mentioned, I look at this case and I think this is a problematic strip search, but part of why I think it is a problematic strip search, a big part, is because there was touching and because there was coerced consent, which is really kind of not the point of any of these circuit precedents. And I wonder whether this is really more of an obvious clarity case because of the touching and the coerced consent. What do you say of that? Your Honor, I think you raise an interesting point. And I would say that in every, the question is never in a qualified immunity case just is there a robust consensus. Like that's a step along the path to whether there's fair notice. So you never look just to the robust consensus. You also look to the other things that might bear on whether or not there's fair notice. And Your Honor has just raised a couple that I think add on top of that. So you have that robust consensus. And then on top of that, you have the coercive nature of threatening to send Ms. Gilmour to jail and strip search her if she didn't consent to a strip search. So just so I understand, I guess I took the Chief's question to suggest that there might be two different analyses going on here. One, the robust consensus that you've been talking about runs to initiation. But then the fourth factor that you mentioned that the Chief picked up on regards the scope of the search. Can those two things sort of work in symbiosis or are they different? I think that they work in symbiosis. And part of the reason for that is if they had reasonable suspicion, then I think there might be more of a bifurcation there. Because you'd be asking in terms of reasonableness, you'd be asking first, was there reasonable suspicion? And then second, even if there was reasonable suspicion, was the manner of the search impermissible? Well, see, part of my problem is at the initiation. Because, you know, one of the things that's been touted here are the Hawaii cases. I've read those cases and they seem to be premised on reasoning about consent. And it's not entirely clear to me that the Hawaii court necessarily would come out differently because of that, that it was based on consent. And here, the initiation, as I understand it, was also a matter of coerced consent, according to your client. Sign this form or we'll arrest you, right? That's the record, right? Yes, Your Honor. So, if your client had been told, as I understand it, their notice is posted in this facility that say, you're subject to search, it may be a pat down, metal detector, those sorts of things, it doesn't say strip search. I read the sign this morning in the record. But if it had, if she had been told, you might be strip searched and had signed a form, we'd be dealing with a different case, wouldn't we? We would be dealing with a different case with the same answer, Your Honor, because those Hawaii cases from, I believe they're 1979 and 1980, have since been repudiated by every single circuit case that came next. And those circuit cases often involve situations, including Burgess, for instance, in which there was consent. Does it matter? Since the rationale is different in the Hawaii cases, doesn't that do something to remove it from, you know, to the extent that you're counting noses, doesn't that do something to remove it from that body of cases that you would look at for the consensus? Yes. Doesn't that cut that way? Yes. I don't, yes. One other question I had was, it seems to me that if we look at it, especially after you say, after Andrew v. White, I think we can make more of the Supreme Court's discussion of robust consensus than maybe we would have before. And then, can't we look at a robust mandate for this court to accept that rule, but as a sign or a signal of the obvious clarity of the point? We're not, we're not bound by what other circuits say, right? No, I don't think this court is bound by what other circuits say. But could we look to the pretty striking consensus of cases across other circuits to say, well, here's a signal that this is very obvious, right? This is not, this is not an edge position that we'd be expanding. This is just something that everyone who's called to look at the issue essentially comes to the same conclusion, right? So I think that this particular case maybe muddies the water, because I think it is an obvious case in addition to being a robust consensus case, but that's not... If it's obvious, does that mean that we don't have to decide this, I think, we'll, we're here, difficult issue of what Supreme Court precedent is and whether we should overrule our own precedent. In other words, if there is, no pun intended, an obvious answer to the question, that it falls under a prong that we all agree exists, and everyone agrees that it does here, then why go through the trouble of doing all this other stuff that seems to be unnecessary to the outcome in this case? Your Honor, respect, I see that... I'm convinced you can absolutely answer that. You're on our time. Given my time. All right. So I think that the answer to that is that technically you don't, that if you do reach those questions and you do decide the robust consensus issue, that would still be a binding alternate holding. And that I think that this is kind of an open and shut case of vertical precedent. So I don't think that this court needs to reach out very far. All it has to do is say, well, Wilson said this, and Ashcroft says that, you know, what is necessary absent controlling authority is, is a robust consensus. And Justice Thomas said in Westby that what it means to be settled law is to be controlling authority or a robust consensus, and that those are very straightforward black and white dictates from a court that this court is obligated to follow. And so I think that this is... That makes it sound, though, that you're saying that we would be bound by a robust consensus. And I understood you a minute ago to say that we wouldn't be bound by a robust consensus. I believe that you are bound by the robust consensus requirement. Well, we have to, we have to decide ourselves whether it's right in the first instance. I mean, we're not really bound. What you're saying, I guess, is that if we have already found it to be a constitutional violation, that the robust consensus would bind us, that it's clearly established. I am saying that binding Supreme Court holdings have determined that a robust consensus, if you have... Clearly establishes the law. Clearly establishes the law. That's your argument, isn't it? Not, not that it binds us, though, on the determination of the violation itself. No, no, no, no, no, no, yeah. No, I was not trying in any way to connote that. This Court maintains it's power to make that decision, of course. Yeah, that's how Powell led to Florence. Chief, may I ask a question? Sure. So, you're saying that the robust consensus would fall under the clearly established, right? Yes. But we have precedent that says that clearly established means it has precedential value. And the robust consensus of cases are just persuasive authority, correct? Yes, Your Honor. So then, would we then have to overrule all our other cases that say that clearly established means it has precedential value, whether it's vertical or horizontal? To the extent, I think it would have to overturn them to the extent that you were saying that sister circuit authority, when it was sufficiently robust, could clearly establish the law, though it of course couldn't bind this Court in the first instance. Yeah, okay. I think we understand your case. You've saved four minutes for rebuttal. General Petrani. Thank you, Your Honor. May it please the Court. A robust consensus standard is completely inconsistent with all of qualified immunity jurisprudence. The only argument— Why does the Supreme Court of the United States keep telling us that it's part of it? Actually, Your Honor, it's said quite the opposite on at least four different occasions. It has used phrases like, to the extent a robust consensus could clearly establish the law, assuming—even assuming— Westby. Westby. Westby's pretty clever. Westby doesn't say that. Well, to be clear— You've got four without any qualifying language, and you've got two or three with qualifying language. And the most recent one doesn't have qualifying language. Well, no, that's not true, Your Honor. In both City of Escondido and Rivas Villegas, the Court said, assuming without deciding that a court of appeals decision may constitute clearly established law at all. A court of appeals decision. That was a different—I think they're hedging to make sure that they don't get boxed in in some other way. But it didn't say, assuming a robust consensus, right? But they have—they've said the same thing multiple times. So do we assume— In treehand and tailwind. Do we assume, based on that, that our decisions are not binding? Obviously not, right? I'm sorry, Your Honor. I didn't— Do we assume, based on that, that our decisions also cannot establish clear law? Your decisions are binding under your—it's because you, this Court, has made that determination. If the Supreme Court were to address that question, obviously then that would, you know, decide the issue one way or the other. But I also just want to talk about—a little bit about, like, what a holding even is. As Chief Judge Pryor pointed out, the Supreme Court has never, not once, come remotely close to saying there's a robust consensus here and it clearly establishes the law. Yeah, but finding—but finding that a principle hasn't been established doesn't mean that the principle is nonexistent. I— So here's—so here's—here's Andrew from less than a month ago. When this Court relies on a legal rule or principle to decide a case, the principle is a holding of the court for purposes of AEDPA—that was an AEDPA case, not a qualified immunity case. I continue. The legal principle on which Andrew relies, that the due process clause in certain cases protects against the introduction of unduly prejudicial evidence in a criminal trial, was indispensable to our holding in Payne. That means that it was a holding of this Court for purposes of AEDPA, even though in Payne, the Court didn't say there was a constitutional violation. It said there was no constitutional violation because the due process clause protected against the introduction of overly prejudicial evidence in some cases. That's very close, I think, to what you have here. I don't think it is at all, Your Honor. This is not a situation where the Supreme Court took a question, addressed the question, and then said either, you know, we're not going to apply the standard ourselves, we're going to send it back to the lower courts, or, but, applying the standard, it turns out that, you know, the Petitioner loses anyway. We're talking about, at most, a sentence and a half in two decisions where the Court says, well, there is no robust consensus here. That is not — the Supreme Court has not even analyzed this question. There is no case out there where this has been briefed. There is no case out there where the Supreme Court has even pretended it's been briefed. So even granting your premise, which I'm frankly not sure I agree with, that there is no Supreme Court holding the way that I have understood and written about holdings, but even granting the premise, what do you do with our boatload of case law that says there is dicta, there is dicta, and there is Supreme Court dicta? So at worst, this is dicta, really serious and repeated dicta. So what do we do with it? We just walk away? Your Honor, I agree that Supreme Court dicta matters, but we have Supreme Court dicta going the other way as well. We have Supreme Court dicta saying, to the extent a reasonable consensus of — That just sounds like bracketing, not going the other way. We don't have anything that says, hey, never mind, robust consensus doesn't qualify. Yeah. But if all — but, Your Honor, if all you're talking about is what kind of sense are we supposed to take from the Court's dicta, the fact that the Court has on numerous occasions said we have not even — are not saying that we've decided this, I mean, how could it — it also makes no sense, by the way, that the Supreme Court, which has explicitly, repeatedly said, even Gilmore does not disagree with this, that it's not even clear whether circuit precedent can at all constitute controlling authority. Controlling authority, right? But the idea — well, but this is the whole point, is whether something clearly establishes law, how could it be that a — you know, a circuit precedent can do that or can't do that, but five out-of-circuit precedents could? No, no, no. The Supreme Court says circuit precedent may or may not be in footnote 8 of Wesby, right? The Supreme Court says circuit precedent may or may not, they bracket the question, constitute controlling authority, but in the same decision, the Supreme Court pretty clearly says there are two pathways here, controlling authority or a robust consensus of persuasive authority. Oh, no, I — no, I get what you're saying, Your Honor. My point is that it makes no sense to say that this Court's own decisions do not clearly establish law, but that other circuits' courts in the aggregate somehow can. Well, it would — it would if you were the Supreme Court, though, right? Because the Supreme Court isn't bound by our decisions. So, I mean, when the Supreme Court is saying a robust consensus of persuasive authority, is it perhaps talking about persuasive to it? To it, I think. Well, here's a key point, Your Honor. We have no idea what the Supreme Court is talking about when it's referenced robust consensus of authority, because it's never actually applied to it. Well, one of the possibilities, it seems to me, is that it would be kind of a subset of obvious clarity, an example of it, that it corroborates it. I can imagine that there would be some proposition of constitutional law that everyone regards as so settled that many, many inferior courts have — have so ruled, but that the Supreme Court hasn't needed to rule because it hasn't gone to it, it's been so obvious, and that maybe even our court hasn't ruled. It could mean that, right? Your Honor, I actually think that makes — raises a very important point here, which is, this is the main reason why this rule makes no sense at all. We have obvious clarity. If it is an issue that is so obvious that no court would decide it a different way, we don't need this rule. But if it is not that obvious, then you don't have fair notice. Remember what — When you say — when you say this rule, please tell me very specifically what rule you're referring to. I'm talking about this rule. I'm talking about — well, in this case, we're talking about whether or not prison visitors without reasonable suspicion. So my — but my point is, in any case where you're looking at some proposition of law, right, any qualified immunity case, you're looking at some proposition of law, is it clearly established? And one way you can clearly establish it is to say that it's obvious. You don't need a court to tell you that. So then, are you suggesting that it was clearly established here, given that at the time, seven — all seven circuits that had considered the question had concluded the same thing, that it — that you needed reasonable suspicion? No. My point, Your Honor, is that it's precisely because it was not obvious that looking at other courts just doesn't get you there. So, first of all, I do want to talk about the Hawaii cases a little bit, just in terms of talking about this — this supposed consensus. But before we — before we get there, my — my broader point is, if it's obvious, you don't need to look at, you know, unanimity or something close to unanimity or whatever it is that's said. So then you're saying it's — it's not a subset, right? Because, I mean, you can't have it both ways. You can't say, if it's obvious, you don't need to look at it, or — and also say, well, if there are so many — if there are so many circuits that have held one way, then that means it's obvious. I mean, those are kind of contradictory. Your Honor, my point is, the reason you don't — you would never need a robust consensus authority rule is, there's only two possible situations. One is, the rule is obvious, in which case you don't need the rule. Two is, the rule is not obvious. If the rule is not obvious, how does a state — how does a state official have fair notice that they were bound by this rule? Well, also, remember that — well, in a couple ways, right? First of all, remember that when we're talking about the whole construct of qualified immunity, it's all judge-made law. Second, remember also that when we're talking about notice of — the whole thing is really a legal fiction, isn't it? I mean, we're talking about notice of opinions from this circuit. We don't expect that, you know, every police officer is out there reading the law that we write. No. What happens is, governments train their officers in what the law is. And what is the difference if they're training in the law of what this circuit puts out, or what is so overwhelmingly the law in a bunch of other circuits? I mean, that's a lawyer's job. It's not that much more difficult to figure it out. It's an enormous difference, Your Honor, an enormous difference. For one thing, nobody knows what a robust consensus is. Well, that's not actually true, is it? I mean, if we look at all of the other circuits, there are seven circuits that have found — well, two have found that two are enough. That does seem a little low. Five have found that three are enough. So if we look at that seven, meaning more than half of the circuits, have found that three or fewer is enough to establish a robust consensus, provided they're unanimous. The other circuits, one, the 10th, has said, you need six. And all of the remaining circuits that have looked at it have not said how many you need, but have found that five or six, where those happen to be provided, were enough. But they haven't said you require five or six. So in any case, all of those are fewer than what we have here, which is seven. So you could even say there's a robust consensus of circuits that have determined that a robust consensus consists of six or fewer, couldn't you? I can't think of a better example of how unworkable this rule is than that no other circuit can actually agree on what it is, including intra-circuit, as we pointed out in our brief. Well, I don't think that's accurate. The Seventh Circuit has said different things at different times. If you look at it, as I've just said, every single circuit who's opined has said six or fewer. And I think that's 11 other circuits that have said that. Let me ask you this, Mr. General. One of the things, a couple of things, trouble me about this case is the coerced consent and the touching, which we have to assume is true. That's the plaintiff's testimony. Isn't this, isn't that a problem in terms of obvious clarity and whether we even need to get into the reasonable suspicion case? Because as I understand it, it's a Fourth Amendment case, totality of the circumstances. Those are two of the circumstances. She says, I didn't smell of marijuana. The officer says, she did. We have to take her testimony as true. When we take everything about hers as true, I'm uncomfortable with just keeping out some of the important facts that to me are really ugly facts that might well establish that this was an unconstitutional search. So, two basic responses there, Your Honor. The first is the instinct of really this is a question of obvious clarity. I want to get to whether this is a question of obvious clarity, but that is the correct instinct. There's no reason to be looking at some amalgamation of other circuits who might be wrong, who might be dependent. But we need to consider all the facts, too, don't we?  So, the reason I don't think this is a question of obvious clarity, even if you look at the additional facts here, is because if you start from the premise that it was reasonable for this particular official to believe that she had the authority to strip search without reasonable suspicion. And here's the thing, though. But why do we start from that? Why would we start from that premise? I think that premise is what we're questioning. For what it's worth, I find it, I would not think that a prison guard would assume that they could strip search anyone who came into the prison at essentially random. I find that a hard and troubling thing to believe. Well, there's a difference between it being at random and having, you know, something less than reasonable suspicion, like a hunch or so forth. But and I'm happy to get into the question of, you know, on the merits, how close of a question is this? The reason that I Well, there's also a difference between saying, you can leave versus you're going to be stripped search, sign this form, if you don't, you're going to be arrested. No, I agree with that, Your Honor. And the reason I was starting with the premise that this was a reasonable thing for the official to do is because if you say, well, this was unreasonable, this was already clearly established, you're not allowed to do that, then we don't even need to get to the question of the additional facts. But if the point is you're starting from the premise of, well, maybe it's the additional facts that are a problem here. If you have the authority to strip search someone when you have a hunch, and then they say, no, I don't want you to strip search me, and they, in fact, refuse to be strip searched, then, I mean, the next step, it's, I'm not saying that this is what you have to do or would happen in every circumstance, but the next step might be, well, okay, then now I really think that you've done something illegal and I'm going to arrest you. Because a person decides that they don't want to have their body searched for no reason at all, no reason has been given to them, and that in and of itself heightens the suspicion that the person had some kind of contraband? Is that what you're saying? We're living in the, I'm trying to live in the world where it's at least reasonable for them to have the policy where they can strip search based on reasonable suspicion. Well, the best world is to be in Ms. Gilmour's position and imagine yourself visiting someone in prison, no reason, you've already gone through a metal detector, I think the wand, I think the body patch search, and then you get inside the room and now you're forced to open your legs and your buttocks and be completely exposed. If you're putting yourself, like you said, in the real world in her position, you're saying that that is okay? Well, I'm not necessarily saying that's okay, Your Honor. What I'm saying is that prisons are different places and it's not clearly established that they didn't have the authority to do this. Let me point out in the whole, I want, You can't possibly be suggesting that a visitor's refusal to undergo a strip search provides probable cause for an arrest, right? I heard you coming very close to that suggestion. That's not what you're saying, right? My point is not, I don't, my point is not necessarily to defend, we don't think that this is what happened, so we're not necessarily trying to defend that search and attack. No, I know, but you're stuck with a record. No, but my, but my point is simply that we're looking at state officials who have nothing from this court declaring one way or the other whether they can strip search prison visitors without reasonable suspicion. And once you're in that universe, what comes next, you have to look at it also from the perspective of the prison. But if the Supreme Court has been clear about one thing, it has been clear, I think, that you don't need, the only way to reach that is not a specific holding from the court on the facts of the case, right? The Supreme Court has been plain that that's not the only way to evade qualified immunity. That's certainly true, Your Honor, but this is not an easy question. I mean, to be clear, the only cases we have from the Supreme Court on this have said you can, in fact, do strip searches without reasonable suspicion, including of unconvicted arrestees for minor crimes coming into the prison for the first time. I'm not saying that that, it's necessarily correct that you can strip search visitors without reasonable suspicion. But the idea that it was somehow clearly decided in this circuit, I think, is beyond the pale. But just so we're clear, because I think you've gotten kind of waylaid along the way, back to the Chief's question, he said, you know, sort of totality of the circumstances, and you got to talk a little bit about the consent, the coerced consent. What about the scope of the search, the touching? Yeah. So, Your Honor, the questions we were directed to brief were about robust consensus and whether there's a robust consensus. I don't think that that affects that question at all. If the court wants to discuss or wants to rule on the basis of, well, actually, there's additional factors here that make this a question of obviousness, that's a whole different question. I mean, I tend to agree with the panel opinion that it was not obvious in the Because of Florence. Yeah, I think Florence, also this Court's decision in Powell, also, I mean, also we But that, I mean, that's basically what the panel said. Florence and Powell means it's not obvious. But, I mean, but I read, for example, Powell, and Powell says that the strip search is okay so long as it's no more intrusive than that approved in Bell. I think Florence basically can be read that way, too. That means no touching. Well, to be clear, what Florence said is you can go this far. It didn't hold anything about whether you can go further or not. And this is the whole point. But if the officer's reading both of those decisions, so long as it goes no further than that approved by Bell is what it says. That doesn't really give them a lot of comfort. That has nothing to do with a robust consensus. If what the Court holds is Florence itself clearly established that you cannot strip search a visitor without reasonable suspicion, that has nothing to do with it. No, I'm not saying that either. I'm saying it might satisfy obvious clarity and that Florence and Powell don't really muck up the obvious clarity because they don't provide you a safe harbor. I get that. I agree with Your Honor that it's a separate analytical path that, again, has nothing to do with robust consensus. And so if the Court is left with nothing here but this, I do not believe that you can look at a couple of sentences where the Court held there was no clearly established law on point and turn that into a holding on an issue where nobody really knows what a robust consensus or not will apply. Can I get back to that for a second? So I want to jump off where Judge Newsom left off earlier, and that is let's assume it's dicta. Now, in the case where we've not decided anything, I think we've said exactly what Judge Newsom has said, is there's dicta and then there's Supreme Court dicta. And we take that very seriously. But in a case where we have holdings specifically going the other way, what factors have we time and again looked to see whether we should be overruling our cases in favor of stray dicta in a Supreme Court decision? Generally, the stare decisis factors are going to be the soundness of the original decision, workability, reliance interests. So how does reliance and workability work here? Again, assuming the world where this is dicta and we're deciding whether to overrule established precedent. In terms of reliance, I can tell you that no one, State officials in the Eleventh Circuit are not looking to other courts' opinions for how to figure out what's clearly established. In terms of workability, we have laid it out. You should look at page 20 of Gilmour's own reply brief for how unworkable this rule is. It gives no fair notice to anyone. Qualified immunity means the question must be beyond debate. How am I supposed to know as a general counsel in a State agency, okay, six courts have said this, but it turns out that three of them relied on a decision that the Eleventh Circuit disagreed with. How are we supposed to ever know? Counsel, we sort of danced around this, but is it circuit decision? Is persuasive authority circuit decisions or do decisions of a Supreme Court of a State or intermediate appellate courts of a State, which are applying the same constitutional principles that we're applying, is that persuasive authority? Your Honor, not only do I not know, but none of the other circuits can agree on this, and sometimes they don't even agree intra-circuit. Sometimes they say we don't look at those kind of decisions. Sometimes they say that we do. And the point is, at bottom, to the extent that this is just, let's say you were just writing on a completely blank slate, and I don't think you are. I think the Supreme Court has made very clear qualified immunity is about clear rules, fair notice, et cetera. But on a completely blank slate, this rule makes no sense because whatever else qualified immunity is, it is a balancing of costs and benefits. The costs here are immense and widespread for State officials, litigants, courts, because in every case you're going to have to look for this, and you don't know whether you found it. But the benefits are one person, every once in a while, gets an additional remedy. Well, you know, every maybe decade. Judge Jordan, Judge Jordan, have the next question. The notice issue is, to some degree, it's absolutely required. That's the basis for qualified immunity. But it's a fiction, right? Because if we issue an opinion today, a panel issues an opinion today on an issue of first impression, on a Fourth Amendment issue of first impression, opinion goes to the clerk's office at 4 p.m. today, gets published and issued at 5, police officer gets on the midnight shift at 12, changes in conduct, which we said six or seven hours before is unconstitutional, that police officer is on the hook. And I can bet you that no matter how sophisticated the police department, that police officer isn't switching on Westlaw in his patrol car when he starts. So the notice is critical. It underlies qualified immunity. I agree with you. But it's an artificial construct. It's a purely objective one. And we don't care whether or not the officials knew about the law. The question is whether the law was on the books. So two points.  And so that takes a little bit away, I think, from your robust consensus argument that people aren't going to be looking at other circuit opinions. They're not going to be looking at our opinions either. I could not disagree with that more, Your Honor. I can tell you, as someone who works in a state legal office, we absolutely are looking at these opinions. But the police officers on the ground are not. They're getting, Your Honor, they're getting training on these things. Policies are built based on these things. But even if you disagree with me, if it's a legal fiction here, it's a legal fiction behind all of qualified immunity. Correct. It's not the sort of thing where you should break off one particular chunk of qualified  It's completely different here. Because in this particular instance, for some reason, we care that it's a legal fiction. That's just true across the board. Okay. Thank you, General Petrani. We're going to hear three minutes from Mr. Kimmett. Thank you, Your Honors. Three quick points. First. Let me ask you one quick point. Because you made a representation about the Hawaii cases and that they've been basically trashed since then. I read these as consent cases. I'm reading from Custodio and it said, we upheld . . . this case is that Martinez is dispositive of the search of the balloon in this case. We upheld, and they talk about Martinez, the search. Finding defendant's consent to the search is established. Now, surely, if visitors are told beforehand that they could be subject to this and they consent, we're in a completely different world. That's not going to be a Fourth Amendment violation, right? We are in a different Fourth Amendment world, yes. Your sister circuits have said that's still a Fourth Amendment violation. Even when the visitor has consented before coming in? Well, yeah, that's . . . now, there's . . . I can promise you this much. At least there's one judge who would disagree with that. But we don't have to decide that today, right? I'm not trying to convince Your Honors about this. I'm just telling you what the courts say. So three quick things. First, the regulations in the Georgia Department of Corrections say, one, no body cavity or other intrusive searches. That's just period, the end. Two, reasonable suspicion is required. And three, just a flag in terms of the notice that was specifically provided in this case, the strip search approval form that all of the defendants here had to negotiate in this case, which is in the appendix, it's document 50-8 at page 10, requires them to fill out a form that says, please list the specific facts which lead you to believe there is reasonable suspicion that justifies the strip search. They had to fill that out here. They provided zero facts. Then a different defendant had to review their facts, which don't exist, to be clear, and say that that made out reasonable suspicion. So this is not a case where they lacked fair notice in a lofty sense. In a very concrete sense, there was fair notice. Can I ask you one question about, to follow up on the question that Judge Luck was asking you earlier, I think. Do you think that our own unpublished decisions can contribute to a robust consensus of persuasive authority? Yes. Because? Because the touchstone is fair notice, and because they reflect the kind of considered judgment of judges on this case. But how is it fair notice? Just to follow up briefly, district court opinions as well? And if not, why not? I'm just, you can tell, I've unburdened myself at the panel. I don't know how this thing works, but I'm trying to figure out how it works. Okay. So with respect to district court decisions, the only Supreme Court guidance on this question is from Camrata, a little bit, which says that district court decisions are different than circuit decisions, and a lot of circuits disregard them entirely. And there's some judgment, there's some discussion and hope, and in hope the court says that you look to the kind of structure of the federal judiciary, and if we do consider district court opinions, they are no match for the circuits. But how do you deal with our own unpublished cases, because they have no precedential value for us? So a law enforcement officer, or let's say General Petrani, who is giving guidance to law enforcement and saying this is what the issue is, if we issue in five panels, five different decisions, and we don't have agreement, it's not precedential, it has no horizontal precedential value. So how is that clearly established for purposes of law enforcement to know that that is giving them fair notice? Well, it's not, I think that there's a distinction between like what is binding, like what requires a subsequent panel, and what is providing evidence of the state of the law. So if there were disparate decisions, that couldn't provide fair notice. If there were five unpublished decisions from this court that all said the same thing, I think that would provide quite a bit of notice to the state officials. I mean, the distinction the Supreme Court has made is there's controlling authority, and then there's robust consensus of persuasive authority. And if there's not controlling authority, it's up to us to decide what is a robust consensus of persuasive authority, what we consider persuasive enough to put officers on fair notice. Isn't that the issue?  That is 100 percent true. I would say that... Do you agree, would you agree that the controlling precedent, robust consensus, obvious clarity, all are getting at the same thing, at their equivalent standards, and all, they're equivalent. You're not taking the position that robust consensus is more lenient, are you? They're equivalent. And what they all are serving is to shield the officer so long as they're not plainly incompetent or knowingly violating the law, right? Yes, Your Honor. Okay. I agree. Thank you. Court is adjourned for today. All rise.